**The ELTON ORCHARDS, INC.**

v.

**Peter BRENNAN, Secretary of Labor, United States Department of Labor, et al.**

**Civ. A. No. 74–174.**

United States District Court, D. New Hampshire.

Sept. 17, 1974.

Shane Devine, Devine, Millimet, Stahl & Branch, Manchester, N. H., for plaintiff.

William J. Deachman, U. S. Atty., for the District of New Hampshire, Concord, N. H., for defendant-appellant.

Andre J. Barbeau, N. H. Dept. of Employment Security, Concord, N. H., for defendant Adams.

Albert H. Ross, Regional Solicitor, U. S. Dept. of Labor, Boston, Mass., for defendant Brennan.

## OPINION AND ORDER

BOWNES, District Judge.

This is an action brought pursuant to 28 U.S.C. §§ 1343, 1346 and 42 U.S.C. § 1983. Petitioner alleges that arbitrary and capricious behavior by defendants deprived it of equal protection of the law and, concomitantly, of its property without due process. The action complained of is defendants' refusal to provide plaintiff with any of the alien workers who have been allocated to New Hampshire for apple picking.

The basic facts are not in dispute. Experienced apple pickers are important to a successful crop. Pickers from the British West Indies and Canada are noted in the New England apple industry for their experience and general reliability. In order to receive these pickers, an orchard must demonstrate to the Department of Labor that it has tapped all available state and national employment sources. This requirement insures that Americans are employed before aliens. Orchards tap national sources of labor by distributing a "Rural Manpower Job Offer" among various manpower administration agencies.

Plaintiff sent such an offer for fifty workers, and it was accepted by workers from twenty-six counties of Louisiana. These workers were described by the Louisiana Department of Employment Security as unanimously "inexperienced" and requiring "on the job training." At the hearing, the Department of Labor indicated that "on the job training" generally requires two weeks. Plaintiff's manager stated that he had poor work experience with pickers from Louisiana. If plaintiff accepted the Louisiana pickers, then it would be the only one of the seventeen New Hampshire orchards large enough to employ alien pickers not to be employing any of these this season.

Plaintiff communicated with the Department, asking that it be provided with some of the approximately three hundred and forty skilled, alien workers available to New Hampshire. In turn, plaintiff

offered to take some of the fifty Louisianians, with the remainder distributed among the orchards that would have to give up their skilled pickers to plaintiff. The Department refused any compromise.

In years past, a compromise of this sort had been reached with the Commissioner of the New Hampshire Department of Employment Security (hereinafter, "Commissioner"). The criterion used to determine how many foreign workers would go to any orchard was "need." The Commissioner stated that this year plaintiff needs approximately fifty alien pickers to bring in a crop representing 10% of New Hampshire's apples.

## RULINGS AND FINDINGS

█ There is no factual basis for jurisdiction under 42 U.S.C. § 1983. The Commissioner of the New Hampshire Department of Employment Security, Benjamin C. Adams, made it clear in his testimony that the action complained of was pursuant to federal law. There is, therefore, no "color of state law" that would support a section 1983 civil rights action.

This court, however, has jurisdiction pursuant to 28 U.S.C. § 1346. Defendants attack this jurisdictional basis, claiming that the action is an unconsented suit against the United States. I do not agree with defendants' claim, for it has been held that:

> [A]n action against a government officer is not a suit against the United States if the action complained of is "not within the officer's statutory powers or, if within those powers, only if the powers, *or their exercise in the particular case,* are constitutionally void." (Emphasis supplied.) Menard v. Mitchell, 139 U.S.App.D.C. 113, 430 F.2d 486, 493 n. 36 (1970), and cases therein cited.

Thus, the court has jurisdiction, because it is alleged that the particular exercise of powers is unconstitutional.

The next issue is the validity of the plaintiff's claim that it is being deprived unconstitutionally of equal protection of the laws. Plaintiff asserts, in effect, that it has been victimized by the application solely to it of Federal Labor Regulation 20 C.F.R. § 602.10. That Regulation provides, in essence, for the protection of the American labor market by requiring an employer to make best efforts to attract American employees as a prerequisite to a certification from the Secretary of Labor permitting the employ of aliens.

Plaintiff claims neither a conscious, discriminatory process nor discrimination inherent in the Regulations. The discrimination that has occurred resulted from accidental application of the pertinent regulations under the specific facts of the case.

█ Firm, legal precedent supports the claim that accidental discrimination can be unconstitutional. In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962), the Court held that the giving of excessive voting power to some districts by the taking of voting power from others was discriminatory whether or not there was an intentional policy to discriminate. Mr. Justice Brennan noted that:

> It has been open to the courts since the enactment of the Fourteenth Amendment to determine, if on the particular facts they must, that a discrimination reflects *no* policy, but simply arbitrary and capricious action. *Id.* at 226, 82 S.Ct. at 715.

In Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968), the Housing Acts of 1949 and 1954, as amended, provided in part for displacement of low income families. Because of community prejudice, negro displacees had greater difficulty relocating than did their white counterparts. Plaintiff wanted defendant to construct special housing for negro displacees. Defendant refused, arguing, apparently without contradiction, that the enabling

laws were neither inherently discriminatory nor part of a plan to discriminate. The resultant discrimination was merely "accidental to the plan." The court held in favor of plaintiff, quoting Judge J. Skelly Wright:

"Equal protection of the laws" means more than merely the absence of governmental action designed to discriminate; . . ."we now firmly recognize that the arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme." Hobson v. Hansen, 269 F.Supp. 401, 497 (D.D.C.1967). *Id.* at 931.

■ Absence of equal protection of the laws has almost certainly been accidental here. But accidental or not, plaintiff will suffer irreparable injury if its crop is not picked in the most fruitful possible way.

Defendants suffer no harm if I rule in favor of plaintiff's motion. If the Louisiana pickers are distributed among all the orchards, the orchards will receive equal treatment, and the same number of Americans will be employed as would be were I to deny the motion. Because no reduction in the number of employed Americans will result, the policy and purpose of 20 C.F.R. § 602.10 ("that the employment of the beneficiary [alien picker] will not adversely effect the wages and working conditions of workers in the United States similarly employed") will not be frustrated.

The exercise of authority given under 20 C.F.R. § 602.10 is arbitrary and capricious in this instance, depriving thereby plaintiff of equal protection of the laws. I find that irreparable harm may occur to the plaintiff if a preliminary injunction is not issued, and that the plaintiff will probably prevail on the merits.

Wherefore it is ordered:

That the defendants are ordered to make available forthwith to the plaintiff an aliquot portion of the foreign pickers based on the amount of apples anticipated to be harvested by plaintiff in relation to the amount of apples to be harvested by other orchards employing alien pickers. The plaintiff is entitled to its fair proportion of the foreign pickers, no more, no less. If plaintiff wants additional pickers, the defendants shall provide them from any available source, provided that no further discrimination occurs.

So ordered.